```
                                                        USDC SDNY
                                                        DOCUMENT
UNITED STATES DISTRICT COURT                            ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                           DOC #:
                                                        DATE FILED: 12/4/2024
```

UNITED STATES OF AMERICA,

-against-                                   1:23-cr-554 (MKV)

LARRY RAMOS,                                **OPINION AND ORDER DENYING
                                            MOTION TO DISMISS INDICTMENT**

                      Defendant.

MARY KAY VYSKOCIL, United States District Judge:

      Defendant Larry Ramos moves to dismiss the Indictment in this case charging him with possession of a firearm and ammunition following a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count One), and possession of a defaced firearm, in violation of 18 U.S.C. § 922(k) (Count Two). Ramos argues only that, following the decision of the United States Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), Section 922(g)(1) is unconstitutional [ECF No. 59 ("Def. Mem.") at 1]. Defendant's motion is DENIED because Section 922(g)(1) is constitutional under binding Second Circuit precedent, he fails to raise any challenge to Count Two, and his motion is untimely.

### I.    BACKGROUND

**A. Facts**

      The government alleges that, on or about July 5, 2023, Defendant Larry Ramos "dropped a 9mm semiautomatic pistol outside the window of his residence in the Bronx, New York, in full view of a NYPD officer who was present to arrest [him] for another crime" [ECF No. 1 ("Cmpl.") ¶ 4; *see* ECF No. 11 ("Indictment") ¶¶ 1, 2]. According to the government, the "pistol had a defaced serial number and contained one round of ammunition in the chamber as well as six rounds in the magazine." Cmpl. ¶ 4; *see id* ¶ 5(d); Indictment ¶¶ 1, 2. The government further alleges that, after transporting Ramos to the police station, several officers returned to his residence and

obtained consent from his mother to conduct a search. *See* Cmpl. ¶ 5(f). The officers discovered a "Winchester .22 caliber rifle" which the government contends belonged to Ramos. *Id.* ¶ 5(g); *see id.* ¶ 5(i); Indictment ¶¶ 1, 2. According to the government, before the events of July 2023, Ramos had previously been convicted, in September 2017, of assault in the second degree, in violation of New York Penal Law § 125.05(6), for which Ramos was sentenced principally to a term of imprisonment of two years. Cmpl. ¶ 6; *see* Indictment ¶ 1.

### B. Procedural History

In October 2023, the United States Attorney's Office for the Southern District of New York (the "government") filed a sealed criminal Complaint against Ramos [ECF No. 1 ("Cmpl.")]. He was arrested, appeared before a magistrate judge, and was released on a personal recognizance bond [ECF Nos. 4–10]. Shortly thereafter, a federal Grand Jury returned an Indictment charging Ramos with one count of being a felon in possession of firearms and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 2 ("Count One"), and one count of possession of a defaced firearm, in violation of Title 18, United States Code, Section 922(k) ("Count Two") [ECF No. 11 ("Indictment")].

The case was originally assigned to Judge Crotty, who held an arraignment at which Ramos pleaded not guilty [ECF No. 16]. The case was later reassigned to this Court.

The Court held a bail revocation hearing and pretrial conference in this matter on April 1, 2024 [ECF No. 32]. At that proceeding, the Court "set a schedule" for the case going forward, including "a motions schedule." Transcript of April 1, 2024 Proceedings ("Tr.") at 23:13–23. Defense counsel mentioned "contemplating" a "motion[] to suppress" only. *Id.* at 23:21. The Court made clear that any motion practice had to proceed swiftly. *See id.* at 23:23 ("How quickly can you move?"), 24:14–16 (admonishing counsel not to allow the case to languish). The Court

2

ordered the defense to file its contemplated motion by April 12, 2024. *Id.* at 24:19 ("April 12th[] deadline for the motion"). The Court also scheduled a suppression hearing [ECF No. 32]. The defense filed a motion to suppress by the deadline set by the Court [ECF No. 33].

Thereafter, however, the suppression hearing and other deadlines in the case were delayed significantly because the parties jointly requested a competency evaluation of the defendant [ECF No. 42]. The Court ruled that, although there was no evidence that the defendant is incompetent, the Court would grant the parties' joint request "as a precautionary measure" [ECF No. 43 (quoting *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995))]. The Bureau of Prisons psychologist who evaluated Ramos concluded that, although he has a serious psychological disorder, Ramos is competent to stand trial, and "the parties agree[d]" [ECF No. 57]. Based on the Court's own review of the competency evaluation report, its own prior observations of Ramos in the courtroom, and the representation of both parties that Ramos is competent to stand trial, the Court found Ramos competent to proceed and rescheduled the suppression hearing [ECF No. 58].

The defense thereafter filed a motion to dismiss the Indictment on October 31, 2024, more than six months after the April 12, 2024 motions deadline set by the Court [ECF No. 59 ("Def. Mem."); *see* ECF No. 32]. Defendant's motion incorrectly states that "Ramos is charged with two counts of unlawful possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1)." Def. Mem. at 1. In reality, as set forth above, Ramos is charged, in Count One of the Indictment, with only one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment ¶ 1. Count Two charges Ramos with possession of a defaced firearm, in violation of 18 U.S.C. § 922(k). *See* Indictment ¶ 2. In his motion to dismiss the Indictment, Defendant argues only that "§ 922(g)(1) unconstitutional, facially and as applied."

3

Def. Mem. at 14. He does not raise any arguments for dismissing Count Two or even mention Section 922(k). *See generally* Def. Mem.

The government filed a letter in opposition to Defendant's motion to dismiss the Indictment [ECF No. 60 ("Gov. Opp.")]. The government argues that the motion is untimely and the defense has not offered good cause for the delay. Gov. Opp. at 1–2. The government further argues that, in any event, the motion is meritless. *Id.* at 2–3. The government attaches to its letter its brief in opposition to a similar motion in another case [ECF No. 60-1].

## II.   LEGAL STANDARDS

Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, a court may dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "A defendant faces a high standard in seeking to dismiss an indictment." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016). In deciding a motion to dismiss under Rule 12(b), "a court must accept all factual allegations in the indictment as true," and "should not look beyond the face of the indictment and draw inferences as to proof to be adduced at trial, for 'the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'" *United States v. Thomas*, 492 F. Supp. 2d 405, 412–13 (S.D.N.Y. 2007) (quoting *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998)). A court may address a constitutional attack on an indictment within the context of a Rule 12(b) motion, "because an indictment's defects can affect a defendant's substantive rights at trial." *Smith*, 985 F. Supp. 2d at 561–62 (quoting *United States v. Post*, 950 F. Supp. 2d 519, 528 (S.D.N.Y. 2013)).

Federal Rule of Criminal Procedure 12(c) provides that a court "may . . . set a deadline for the parties to make pretrial motions." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the

4

deadline for making a Rule 12(b)(3) motion," including a motion to dismiss the indictment, "the motion is untimely." Fed. R. Crim. P. 12(c)(3). The court "may consider" an untimely motion "if the party shows good cause." *Id*.

### III.   DISCUSSION

Although Ramos purports to seek dismissal of the entire Indictment, he argues for dismissal of Count One only. He argues that, following the decision of the United States Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the statute he is charged in Count One with violating, 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing firearms and ammunition, is unconstitutional on its face and as applied to him. *See* Def. Mem. at 1–4, 16. Ramos argues that the statute lacks founding-era analogues and therefore runs afoul of *Bruen*'s holding that, to pass constitutional muster, a firearm regulation must be "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24; *see* Def. Mem. at 6–14. Ramos further argues that Section 922(g) is unconstitutional as applied to him because "his felony convictions do not show that he is a current danger." Def. Mem. at 16.

Many other defendants have filed similar motions to dismiss in this District, and the Court is not aware of any instance in which such a motion has succeeded. As this Court and every other court in the District to consider the issue has previously explained, the Second Circuit has held that Section 922(g)(1) is constitutional, *see States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013), and that precedent remains binding on this Court after *Bruen*. Indeed, the Supreme Court this year reiterated that "prohibitions . . . on the possession of firearms by 'felons and the mentally ill[]' are 'presumptively lawful.'" *United States v. Rahimi*, 602 U.S. ----, 144 S. Ct. 1889, 1902 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626–627 & n.26 (2008)); *see* Def. Mem. at 3. Furthermore, nothing in *Bruen* or *Rahimi*, or any other precedent, supports the notion that

5

Section 922(g)(1) is unconstitutional as applied to Ramos, who was previously convicted of felony assault (and who, the parties agree, is mentally ill).  Def. Mem. at 1; Cmpl. ¶ 6.

    A.  <u>Section 922(g)(1) Is Facially Constitutional.</u>

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The Second Amendment "confer[s] an individual right to keep and bear arms." *D.C. v. Heller*, 554 U.S. 570, 595 (2008).  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  *Bruen*, 597 U.S. at 8–9.  However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626.

The Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.*  In *Heller*, the Supreme Court explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  *Id.* at 626–27.  On the contrary, the Supreme Court stated, such limitations are "presumptively lawful."  *Id.* at 627 & n.26.  The plurality in *McDonald* reiterated that point.  *See McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . . We repeat those assurances here.").

In *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013), the Second Circuit, relying on the assurances in *Heller* and *McDonald*, expressly held that Section 922(g)(1) does not violate the

Second Amendment. *Bogle*, 717 F.3d at 281–82. The Second Circuit in *Bogle* "join[ed] every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *Id.*

In seeking dismissal of Count One of the Indictment, Ramos "maintains that, in light of *Bruen*, the *Bogle* case was wrongly decided." Def. Mem. at 3. However, as the defense concedes, since *Bruen*, the Supreme Court has, yet again, reiterated that "prohibitions . . . on the possession of firearms by 'felons and the mentally ill[]' are 'presumptively lawful.'" *Rahimi*, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626–627 & n.26). As such, the lengthy historical argument in the defense submission is an exercise in futility.[1]

The Supreme Court has clearly indicated that Section 922(g)(1) does not violate the Second Amendment. *See Rahimi*, 144 S. Ct. at 1902. Thus, contrary to Defendant's argument, *Rahimi* indicates that *Bogle* was correctly decided. *See id.*; *Bogle*, 717 F.3d at 281–82; Def. Mem. at 3. While the statement in *Rahimi* about the presumptive constitutionality of the felon-in-possession law "is fairly characterized as dictum," this Court is "obligated to accord great deference to Supreme Court dicta, absent a change in the legal landscape." *United States v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016) (internal quotation marks omitted).

Moreover, the Second Circuit's holding in *Bogle* obviously is not dictum. *See, e.g.*, *United States v. Hampton*, 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023). Where "the Second Circuit has spoken directly to the issue presented by [a] case," this Court must "follow that decision unless

---

[1] Ramos also misunderstands the "historical tradition" test. *Bruen*, 597 U.S. at 24. As the Supreme Court explained in *Rahimi*, a challenged restriction "must comport with the principles underlying the Second Amendment, but it need not be a dead ringer" for a founding-era regulation. *Rahimi*, 144 S. Ct. at 1898 (internal quotation marks and citation omitted). Ramos argues at length that there is no "direct historical antecedent for 18 U.S.C. § 922(g)(1)," Def. Mem. at 9, but *Bruen* expressly does *not* require a "historical *twin*," *Bruen*, 597 U.S. at 30 (emphasis in original). As *Rahimi* makes clear, there is a historical "tradition" of allowing "the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902. Ramos is such an individual because, all parties agree, he has been convicted of felony assault and suffers from a severe mental illness.

7

and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd*, 854 F.3d 197 (2d Cir. 2017); *see also United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022). In *Bogle*, the Second Circuit held that Section 922(g)(1) is facially constitutional, *Bogle*, 717 F.3d at 281–82, and neither the Supreme Court nor the Second Circuit has overruled or undermined that holding.

The opinions in *Bruen* do not support the defense contention that *Bruen* undermined *Bogle*. Rather, "six of the nine Justices authored or joined separate opinions which . . . noted that *Bruen* does not disrupt or abrogate *Heller* and *McDonald*'s endorsements of felon-in-possession laws."[2] *Hampton*, 2023 WL 3934546, at *12; *see also United States v. Nelson*, No. 22-CR-436 (JGK), 2023 WL 6520378, at *2 (S.D.N.Y. Oct. 4, 2023); *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023). Accordingly, nothing in *Bruen* casts doubt on the enduring constitutionality of felon-in-possession prohibitions as articulated in *Heller* and *McDonald* and relied on by the Second Circuit in *Bogle*.

As noted above, *Rahimi* confirmed that *Bruen* did not undermine *Bogle*. *See Rahimi*, 144 S. Ct. at 1902. Since *Rahimi*, the Second Circuit has reviewed the Supreme Court precedents and has observed that prohibitions on the possession of firearms by felons and the mentally ill remain "presumptively lawful." *Antonyuk v. James*, 120 F.4th 941, 968 (2d Cir. 2024) (quoting *Rahimi*, 144 S. Ct. at 1902). Moreover, the Second Circuit has rejected several appeals in which defendants have argued that *Bruen* renders 922(g)(1) unconstitutional, albeit applying only clear-error review

---

[2] Justices Thomas and Gorsuch have also previously "recognized that history supported the constitutionality of some laws limiting the right to possess a firearm, such as laws banning firearms from certain sensitive locations and prohibiting possession by felons and other dangerous individuals." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. __, 140 S. Ct. 1525, 1540–41 (2020) (Alito, J., dissenting).

in non-precedential summary orders. *See United States v. Brillon*, 2024 WL 392949, at *1 (2d Cir. Feb. 2, 2024), *cert. denied*, 2024 WL 4427367 (U.S. Oct. 7, 2024); *United States v. Ogidi*, 2024 WL 2764138, at *1 (2d Cir. May 30, 2024).

Thus, this Court cannot say "that the Second Circuit or the Supreme Court is all but certain to overrule" *Bogle* in light of *Bruen*. *Emmenegger*, 329 F. Supp. 2d at 429. On the contrary, the Second Circuit is likely to reaffirm its holding in *Bogle*. Indeed, every court in this District that has considered the issue has concluded that *Bogle* survives *Bruen*. *See United States v. Gonzalez*, 2024 WL 96517, at *5 (S.D.N.Y. Jan. 9, 2024) (collecting cases). Accordingly, *Bogle*'s holding remains binding upon this Court, and the Court rejects Ramos's argument that Section 922(g)(1) is unconstitutional on its face.

B. Section 922(g)(1) Is Constitutional as Applied to Ramos.

Ramos also challenges the constitutionality of Section 922(g)(1) as applied to him. His argument is wholly meritless. He cites out-of-circuit cases, which do not bind this Court, for the proposition that Section 922(g)(1) is unconstitutional as applied to defendants who have been convicted of non-violent crimes such as food stamp fraud. *See* Def. Mem. at 11–12 (citing *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023); *Kanter v. Barr*, 919 F.3d 437, 466 (7th Cir. 2019) (Barrett, J. dissenting)). Ramos, however, was convicted of felony assault. *See* Def. Mem. at 1; *United States v. Craft*, 2023 WL 6215326, at *4 (S.D.N.Y. Sept. 25, 2023).

The defense blatantly misconstrues *Rahimi* to contend that Ramos cannot be subject to a firearms prohibition unless and until he is adjudicated "a current threat to another individual." Def. Mem. at 24. There is no support for that contention. In *Rahimi*, the Supreme Court held that an "individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 144 S. Ct. at 1903. But

9

the Supreme Court did not suggest that is the only permissible restriction. Rather, as discussed at length above, and as the defense concedes, the Supreme Court in *Rahimi* expressly mentioned that felon-in-possession statutes are presumptively lawful. *Rahimi*, 144 S. Ct. at 1902; *see* Def. Mem. at 3. As an individual who was previously convicted of a dangerous felony, Ramos falls squarely within the constitutionally-sound prohibition on felons possessing firearms and ammunition.[3] *See Craft*, 2023 WL 6215326, at *4; *United States v. Mitchell*, 2023 WL 8006344, at *8 (S.D.N.Y. Nov. 17, 2023). Accordingly, the Court rejects Ramos's as-applied challenge to Section 922(g)(1) and denies his motion to dismiss Count One.

C. <u>Ramos Fails To Challenge Count Two.</u>

Although Ramos purports to move to dismiss the entire Indictment, he does not challenge, or even mention, Count Two, which charges him with possession of a defaced firearm, in violation of 18 U.S.C. § 922(k). As such, Ramos has forfeited any challenge he might have to Count Two. *See United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003). Accordingly, because the Court has denied Ramos's motion to dismiss Count One, and Ramos has not challenged Count Two, the Court denies Ramos's motion to dismiss the Indictment.

D. <u>Ramos's Motion Is Untimely, and He Fails To Show Good Cause for the Delay.</u>

In addition to failing on the merits, Ramos's motion to dismiss the Indictment is untimely, and Ramos has not offered any explanation, let alone good cause, for submitting an untimely motion. *See* Fed. R. Crim. P. 12(c)(3). On the record at a proceeding on April 1, 2024, the Court "set a schedule" for the case "going forward." Tr. at 23:13–15. As authorized by Rule 12(c)(1) of the Federal Rules of Criminal Procedure, the Court "set a motion schedule." *Id.* at 23:22. The

---

[3] The Court notes that, according to the defense, Mr. Ramos is profoundly mentally ill [*see* ECF No. 42]. While not relevant to the charges in the Indictment, the Supreme Court has indicated that prohibitions on the possession of firearms by the mentally ill are consistent with the Second Amendment. *See Rahimi*, 144 S. Ct. at 1902.

10

defense mentioned "contemplating" only a "motion[] to suppress," and the Court, stressing the need to move quickly, set an "April 12th[] deadline for the motion." *Id.* at 23:21, 24:19. The Court did not leave open the possibility that the defense might file other Rule 12(b) motions after the April 12, 2024 deadline. However, more than six months after that deadline, on October 31, 2024, Ramos filed a motion to dismiss the Indictment [ECF No. 59].

The Court "may" consider an untimely motion "if the party shows good cause," but Ramos has not offered any explanation for the timing of his motion to dismiss the Indictment. Fed. R. Crim. P. 12(c)(3). Given that *Bruen* was decided before the Indictment in this case issued, and *Rahimi* was decided four months before Ramos filed his motion to dismiss, it does not appear that Ramos has good cause for filing an untimely motion. Accordingly, the Court also denies Ramos's motion to dismiss the Indictment pursuant to Rule 12(c)(3).

## IV.   CONCLUSION

For the reasons set for the above, Ramos's motion to dismiss the Indictment is DENIED. The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 59.

**SO ORDERED.**

Date:  **December 4, 2024**             _____
      **New York, NY**                          **MARY KAY VYSKOCIL**
                                                          **United States District Judge**